is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

20.     This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contact with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

21.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because one or more of the Defendants either resides in or maintains executive offices in this District and a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein occurred in this District.   Further, Kandi maintains an office in this District and Kandi's securities trade on the NASDAQ, which is located in this District.

## THE PARTIES

22.     Plaintiffs John R. Olson and Solveig L. Olson ("Plaintiffs") are holders of shares of Kandi common stock, were holders of shares of Kandi common stock at the time of the wrongdoing alleged herein, and have been holders of shares of Kandi common stock continuously since that time.

23.     Nominal Defendant Kandi Technologies Group, Inc. ("Kandi" or the "Company") is a Delaware corporation with its principal executive offices located in Jinhua City, Zhejiang Province, China.   The Company's stock trades on the NASDAQ stock exchange under the ticker symbol "KNDI."

24.     Defendant Hu Xiaoming ("Xiaoming") has been the Chief Executive Officer

("CEO"), President and Chairman of the Board since June 2007.  In his roles as the Company's CEO, President and Chairman of the Board for the fiscal years ended December 31, 2015, 2014 and 2013, defendant Xiaoming received $3,842,504, $1,224,277 and $1,461,213 in total compensation,[4] respectively.  The Company admits that defendant Xiaoming is not independent. Defendant Xiaoming has numerous related party financial, business and/or familial relationships with the Company including: (1) a 13% ownership interest in Service Company (Kandi also has a 9.5% ownership interest in Service Company), which as of December 31, 2015, owed Kandi $40,606,162[5]; and, (2) defendant Xiaoming's son, Hu Wangyuan, is the sole shareholder and officer of Eliteway, which served as a U.S. importer of the Company's products.  As of December 31, 2014, Eliteway owed the Company $620,410.  As of October 17, 2016, defendant Xiaoming beneficially owned 13,138,077 shares of the Company's common stock, or approximately 27.54%.[6]

25.      Defendant Bing Mei ("Mei") has been the Company's Chief Financial Officer ("CFO") since November 14, 2016, when defendant Wang resigned (Wang was then appointed Chief Strategy Officer), and has been a director of the Company since December 2016.  In his role as CFO of the Company, defendant Mei is entitled to receive at least $180,000 in base salary, an annual living allowance of $20,000, an aggregate of 10,000 shares of the Company's common stock and an equity incentive at each year end based on the Company's results of operations and his performance.  Defendant Mei's employment agreements runs through November 13, 2019.

---

[4] "Total compensation" includes salary, bonus, stock and option awards, non-equity incentive plan compensation, nonqualified deferred compensation and all other compensation.

[5] *See* Form DEF 14A, at 24, filed with the SEC on November 2, 2016.

[6] Defendant Xiaoming is the sole stockholder of Excelvantage Group Limited ("Excelvantage") which, as of October 17, 2016, owned 12,000,000 shares of the Company's common stock.

26.     Defendant Chen Liming ("Liming") has been a director of the Company since May 1, 2012 and is a member of the Audit, Compensation and Nominating and Corporate Governance Committees.

27.     Defendant Jerry Lewin ("Lewin") has been a director of the Company since November 2010 and is a member of the Audit Committee.

28.     Defendant Henry Yu ("Yu") has been a director of the Company since July 1, 2011 and is a member of the Audit, Compensation and Nominating and Corporate Governance Committees.

29.     Defendant Cheng Wang ("Wang") has been a director of the Company since May 2015 and was the CFO of the Company from May 1, 2015 until November 14, 2016, when he resigned as CFO and became Kandi's Chief Strategy Officer ("CSO").  As CSO of the Company, defendant Wang's compensation will follow the same terms pursuant to his employment agreement when he was the CFO of the Company.  In his role as the Company's CFO for the year ended December 31, 2015, defendant Wang received $1,613,074 in total compensation.

30.     Defendant Yi Lin ("Lin") was appointed to the Board on May 4, 2017, following the death of Ni Guangzheng.  Lin was appointed to be a member of the Compensation Committee and the Nominating and Corporate Governance Committee to fill the vacancies left by Guangzheng.

31.     Defendants Hu Xiaoming, Bing Mei, Chen Liming, Jerry Lewin, Henry Yu, Cheng Wang and Yi Lin are collectively referred to herein as the "Director Defendants."

32.     Defendant Zhu Xiaoying ("Xiaoying") was the CFO (Principal Financial Officer and Principal Accounting Officer) of the Company from June 2007 until defendant Zhu's resignation on April 30, 2015.

33.     The Director Defendants and defendant Xiaoying are collectively referred to herein as the "Defendants."

### Related Party

34.     The Estate of Ni Guangzheng ("Guangzheng") is named herein as a related party because Guangzheng was a director of the Company throughout the Relevant Period of alleged wrongdoing, from November 2010 until his death as reported by the Company on April 28, 2017.

## DUTIES OF THE DEFENDANTS

35.     By reason of their positions as officers, directors and/or fiduciaries of Kandi during the Relevant Period and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Kandi and its shareholders fiduciary obligations of good faith, loyalty and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner. The Defendants were and are required to act in furtherance of the best interests of Kandi and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

36.     Each director and officer of the Company owes to Kandi and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company's affairs and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

37.     The Defendants, because of their positions of control and authority as directors and/or officers of Kandi, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Due to their positions with Kandi, each of the Defendants had knowledge of material non-public information regarding the Company.

38.     To discharge their duties, the Defendants were required to exercise reasonable and

prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of Kandi were required to, among other things:

a.      Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b.      Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal, state and foreign laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

c.      Exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the EV Subsidy Scheme

39.     Kandi was founded in 2002 and was formerly known as Kandi Technologies, Corp., before changing its name to Kandi Technologies Group, Inc. in December 2012.

40.     Kandi, through its subsidiaries, designs, develops, manufactures, and commercializes electric vehicles ("EVs"), EV parts, and off-road vehicles in the People's Republic of China ("RPC" or "China") and internationally.

41.     In 2013, the Company partnered with Geely Automobile Holdings Ltd. ("Geely") in a 50/50 joint venture (the "Joint Venture" or the "JV Company") to manufacture EVs.  The Company's business model generally is as follows: Kandi sells auto parts to the Joint Venture (in

which it has a 50% stake and Geely had, until recently, the other 50% stake). The Joint Venture produces the EVs and would sell them to Zuozhongyou ("ZZY"), which purportedly used the EVs in a car share operation in China.

42. This arrangement was rife with conflicts orchestrated by Kandi's management. ZZY is 9.5% owned by Kandi and another 13% of ZZY is owned by Kandi's Chairman, defendant Xiaoming.

43. Further, Kandi engaged in this business model in order to take advantage of generous EV subsidies from China's central and provincial governments, prior to the subsidies being phased out after Kandi's scheme (and several other similar ones) came to light. In China, there were two kinds of subsidies available: one for manufacturers of EVs and a second for purchasers of EVs. The Joint Venture, as a manufacturer, was eligible for the first kind. Upon information and belief, ZZY was created in an effort to take advantage of the second kind of subsidy for EVs as a purchaser from the Joint Venture. This way, Kandi only had to manufacture EVs and would be able to "double dip" both subsidies, which could be worth more than the cost of building the vehicles.[7]

44. However, as Kandi and other imitators took advantage of the subsidy scheme and the EV industry in China achieved extraordinary growth, in late 2015 and early 2016, the scandal erupted as government regulatory, industry experts and investigative journalists started learning of the scheme.

45. As one of the innovators of the subsidy scheme, Kandi was at the center of the

---

[7] *See* SerrCo, *Kandi Technologies: Chinese EV Clunker Begins To Break Down Amid Subsidy Scandal, 70% Downside*, SeekingAlpha (Aug. 18, 2016), *available at* https://seekingalpha.com /article/4000616-kandi-technologies-chinese-ev-clunker-begins-break-amid-subsidy-scandal-70-percent-downside.