***based on the recommendation of the Company's audit committee, and in consultation with management, concluded that the Company's Previously Issued Financial Statements should no longer be relied upon***. The Company will, in the Form 10- K/A, restate the Previously Issued Financial Statements, which restatement will include separate audited financial statements for the JV Company (the "Restatements").

\*   \*   \*

The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, revisions in the Company's financial statement presentation to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss), certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 – Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of "unaudited" labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements.

***The Company will also amend its unaudited quarterly data for the first three quarters ended December 31, 2016, as set forth in its upcoming Annual Report on Form 10-K for the year ended December 31, 2016***. The Company has not filed and does not intend to file amendments to its Quarterly Reports on Form 10-Q for the quarterly periods affected. Accordingly, investors should no longer rely upon the Company's previously released financial statements for those periods or any earnings releases or other communications relating to those periods. The Company's Quarterly Reports on Form 10-Q for fiscal year 2017 will include restated results for the corresponding interim periods of fiscal year 2016.

In addition, in conjunction with the Restatements, the Company is reassessing its internal controls over its financial reporting and compliance programs. ***The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses and could therefore affect its conclusions regarding effectiveness as previously expressed in Item 9A, Controls and Procedures, of the Company's Annual Report on Form 10-K for the year ended December 31, 2015***. Accordingly, management's report on internal controls over financial reporting as of December 31, 2015, and the associated report of AWC (CPA) Limited, the Company's former principal accountant ("AWC"), should no longer be relied upon. The Public Company Accounting Oversight Board revoked the registration of

AWC on May 18, 2016. The Company dismissed AWC and engaged BDO China Shu Lun Pan Certified Public Accountants LLP ("BDO China") as its new independent registered public accounting firm on April 12, 2016, as previously reported. The Company is committed to maintaining an effective control environment and making all necessary changes to enhance control effectiveness.

96. On this news, the Company's stock dropped from a close of $4.35 per share on March 13, 2017 to close at $4.05 per share on March 14, 2017, a loss of $0.30, or approximately 6%, on unusually heavy volume of approximately 513,200 shares.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

97. Plaintiffs bring this action derivatively in the right and for the benefit of Kandi to redress injuries suffered, and to be suffered, by Kandi as a direct result of violations of federal securities laws and breaches of fiduciary duty by Defendants. Kandi is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

98. The Board of Kandi, at the time this action was commenced, consisted of the following seven individuals: Hu Xiaoming, Cheng Wang, Bing Mei, Chen Liming, Jerry Lewin Henry Yu and Yi Lin.

### Demand is Excused Because all the Board Members Face a Substantial Likelihood of Liability

99. Plaintiffs have not made any demand on the Board to institute this action because a pre-suit demand on the Kandi Board would be futile, and therefore, excused. This is because a majority of the Board faces a substantial likelihood of liability as a result of their scheme to cause the Company to issue materially misleading statements and/or omit material adverse facts which render them unable to impartially consider a demand to pursue the wrongdoing alleged herein.

100. By participating in this course of conduct, a majority of the Director Defendants exposed the Company to damage and injury. Consequently, the Director Defendants face a

substantial risk of liability for causing the Company to issue the materially misleading statements and/or material omissions, rendering them unable to fairly and objectively evaluate a pre-suit demand. Thus, demand on the Board is futile, and therefore excused.

### **Demand is Futile as to Defendant Xiaoming as an Employee-Director**

101.  Defendant Xiaoming has been a member of the Board, the CEO and President of the Company since June 2007.  In his role as CEO, President and Chairman of the Board of Kandi for the fiscal years ended December 31, 2015, 2014 and 2013, defendant Xiaoming received $3,842,504, $1,224,277 and $1,461,213 in total compensation, respectively.  The Company does not claim that defendant Xiaoming is an independent director and because defendant Xiaoming derives significant income from, and his primary source of income is, his employment as CEO and President of Kandi and his professional reputation is inextricably bound to his role at Kandi, defendant Xiaoming is incapable of acting independently and demand is futile upon him.

102.  Further, defendant Xiaoming has numerous related party financial, business and/or familial relationships with the Company that preclude him from being an independent or disinterested director, including: (1) a 13% ownership interest in Service Company (Kandi also has a 9.5% ownership interest in Service Company), which as of December 31, 2015, owed Kandi $40,606,162[10]; and, (2) defendant Xiaoming's son, Hu Wangyuan, is the sole shareholder and officer of Eliteway, which served as a U.S. importer of the Company's products.  As of December 31, 2014, Eliteway owed the Company $620,410.  As of October 17, 2016, defendant Xiaoming

---

[10] *See* Form DEF 14A, at 24, filed with the SEC on November 2, 2016.

beneficially owned 13,138,077 shares of the Company's common stock, or approximately 27.54%.[11]

### Demand is Futile as to Defendant Wang as an Employee-Director

103.  Defendant Wang was the Company's CFO from May 1, 2015 until November 14, 2016, and has been the Company's Chief Strategy Officer ("CSO") since November 14, 2016. Defendant Wang has also been a member of the Board since June 2007. In his role as CFO of the Company for the fiscal year ended December 31, 2015, defendant Wang received $1,613,074 in total compensation. According to the Company's current report on Form 8-K filed with the SEC on November 18, 2016, in connection with being appointed to the role of CSO, defendant Wang will continue to be compensated pursuant to his original employment contract dated March 20, 2015, when he was appointed to the position of CFO. Under this agreement, defendant Wang will receive an annual salary in the amount of 1,200,000 Renminbi ("RMB") (approximately $193,080) and an annual bonus in the amount of at least 300,000 RMB (approximately $48,271). The Company does not claim that defendant Wang is an independent director and because defendant Wang derives significant income from, and his primary source of income is, his employment as CSO of Kandi and his professional reputation is inextricably bound to his role at Kandi, defendant Wang is incapable of acting independently and demand is futile upon him.

### Demand is Futile as to Defendant Mei as an Employee-Director

104.  Defendant Mei has been the Company's CFO since November 14, 2016 and a director of Kandi since December 2016. As CFO of the Company, defendant Mei is entitled to receive at least $180,000 in base salary, an annual living allowance of $20,000, an aggregate of

---

[11] Defendant Xiaoming is the sole stockholder of Excelvantage Group Limited ("Excelvantage") which, as of October 17, 2016, owned 12,000,000 shares of the Company's common stock.

10,000 shares of the Company's common stock and an equity incentive at each year end based on the Company's results of operations and his performance. Because defendant Mei derives significant income from, and Mei's primary source of income is, Mei's employment as CFO of Kandi and Mei's professional reputation is inextricably bound to Mei's role at Kandi, defendant Mei is incapable of acting independently and demand is futile upon defendant Mei.

**Demand is Futile as to the Members of the Audit Committee**

105. Demand is futile as to defendants Yu, Lewin and Liming as members of the Audit Committee (the "Audit Committee Defendants").

106. Pursuant to the Charter for the Audit Committee of the Board of Directors (the "Audit Committee Charter")[12], the "primary function of the Audit Committee…is to assist the Board…in fulfilling its oversight responsibilities by: (1) reviewing the financial reports and other financial related information released by the Company to the public…; (2) reviewing the Company's system of disclosure controls and procedures, internal controls over financial reporting, and compliance with ethical standards adopted by the Company; (3) reviewing the Company's accounting and financial reporting processes and the audits of the financial statements of the Company…."

107. The Audit Committee Defendants were responsible oversight of the accounting, financial reporting processes, and financial statements of the Company. Moreover, it was the policy and practice of Kandi's Audit Committee to review SEC filings and press releases prior to their issuance. As a result, Kandi's Audit Committee either knew that the Company failed to disclose the material information described herein or should have known. However, the Audit

---

[12] *See* Charter for the Audit Committee of the Board of Directors (approved on May 30, 2014), *available at* http://t2.mcp.cn/oshpgkmx/1000984/files/zhili/Kandi_audit%20commitee%20charter.pdf.

Committee Defendants caused the Company to violate federal securities law and breach their fiduciary duties by allowing the false and misleading disclosures and material omissions described herein. As a result, demand is excused as to defendants Yu, Lewin and Liming.

**Demand is Futile as to the Members of the Compensation Committee**

108. Pursuant to the Company's Compensation Committee Charter[13], defendants Liming and Yu, as members of the Compensation Committee of Kandi during the Relevant Period (the "Compensation Committee Defendants"), had the responsibility to "review and make recommendations to the Board…regarding all forms of compensation to be provided to the executive officers and directors of Kandi…including stock compensation and loans, and all bonus and stock compensation to all employees."

109. The Compensation Committee Defendants' responsibilities and duties included, among other things:

> 3.1 Reviewing and making recommendations to the Board regarding the compensation policy for executive officers of and directors of the Company, and such other officers of the Company as directed by the Board;
>
> 3.2 Reviewing and making recommendations to the Board regarding all forms of compensation (including all "plan" compensation, as such term is defined in Item 402(a)(7) of Regulation S-K promulgated by the Securities and Exchange Commission, and all non-plan compensation) to be provided to the executive officers of the Company;
>
> 3.3 Reviewing and making recommendations to the Board regarding general compensation goals and guidelines for the Company's employees and the criteria by which bonuses to the Company's employees are determined…

110. Throughout the Relevant Period, the Compensation Committee Defendants

---

[13] *See* Charter for the Compensation Committee of the Board of Directors (approved November 17, 2014), *available at* http://t2.mcp.cn/oshpgkmx/1000984/files/zhili/kandi%20compensation%20committee%20charter.pdf.